(Decided 12th November, 1891.)

JOHN RICARDS and ALEXANDER T. LEFTWICH, Co-partners, trading under the name and style of RIC-ARDS, LEFTWICH & CO. *vs.* HERMAN WEDEMEYER and FREDERICK KROSE, Co-partners, trading under the name and style of MEYER & KROSE.

*Trover—Principal and Agent—Sale of Goods—Pledge by Agent—Right to Possession.*

D., of Lynchburg, was entrusted by M. & K., of Bremen, Germany, with an order to purchase tobacco for them. He did not have the tobacco in stock but bought it, for the purpose of filling said order; and he paid for it with the funds of his principals, except as to a small balance, for which they remained liable. The payments were made through R., L. & Co., of Baltimore. The tobacco was sent to Baltimore, to A. S. & Co., for shipment by steamer to Bremen. On each hogshead were marks which R., L. & Co. understood, and indicating that it was intended for M. & K., Bremen. The invoice was sent to R., L. & Co., and stated that the tobacco was " bought for order, account, and risk of M. & K., Bremen." And D. gave them an order on A. S. & Co. for the hogsheads of tobacco, and directed A. S. & Co. to make out the bill of lading in the name of R., L. & Co. as shippers, to avoid delay in forwarding, and to enable the latter to attach the bill of lading to the draft on M. & K. for the balance due on the tobacco. When this order was given, R., L. & Co. knew that the hogsheads were intended for M. & K., and that M. & K. had paid, through them, all but a small part of the price of the tobacco. In an action of trover brought by M. &

Ricards, Leftwich & Co. *vs.* Meyer & Krose.

K. against R., L. & Co., to recover the value of said tobacco, which the latter had taken possession of and held, as being the property of D., and as security for an account current due by D. to them, and claiming that D. had pledged the tobacco to them, and given the order to A. S. & Co. in pursuance of that pledge, it was HELD:

1st. That if D. was merely an agent entrusted with an order to purchase, and purchased the tobacco with the money of the plaintiffs, for the purpose of filling that order, the tobacco belonged to the plaintiffs, and not to D., and he had no power to pledge it for the payment of his own debt, beyond the extent of his lien upon it.

2nd. That as D. could not pledge what was not his, and as the defendants did not even claim as *bona fide* assignees of the bill of lading, without notice, they were in no position to assert in themselves either an absolute or qualified ownership of the tobacco, or a right to the possession thereof against the real owners, further than to the extent of the balance due to D. by said owners.

3rd. That whether D. be regarded as the mere agent of the plaintiffs, or as vendor, the ownership and the right to the possession of the tobacco as a legal consequence from the facts above stated, vested in the plaintiffs subject only to the lien of D. for the purchase money remaining unpaid; and no act that D. did, either with respect to the pledging of the tobacco, or giving the defendants the order on A. S. & Co.; could operate to divest the ownership or right to the possession, in favor of parties having full notice of the claims of the plaintiffs.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiffs offered the following prayer:

That if the jury believe from all the evidence in the case that the plaintiffs on or about the 15th of February, 1890, sent an order to their agent, M. Driver, in Lynchburg, to purchase for them twenty-five hogsheads of tobacco, of a certain kind and quality, known to the

plaintiffs, said M. Driver, and the defendants, by the name of "Oblong," at the price of 5½ cents per pound f. o. b., at Lynchburg, and said Driver thereupon, on the 15th day of February, 1890, by a bill of exchange on the plaintiffs, payable to the order of the defendants, and endorsed and negotiated by the defendants, obtained 3,000 marks from the plaintiffs on said order, and by another similar bill of exchange dated March 7th, 1890, endorsed and negotiated by the defendants, obtained a further sum of 3,000 marks from the plaintiffs on said order, and that the defendants knew at the time that Driver had no money of his own, and knew that he obtained said money to purchase and pay for tobacco so ordered by the plaintiffs, and said Driver applied the money so obtained to the purchase, and payment of tobacco so ordered, and in pursuance of said order, bought and packed twenty-four hogsheads of said tobacco, and marked said hogheads [K] B, meaning "Krose, Bremen," and "O" meaning "Oblong," and that by these marks he intended to designate the tobacco as the property of the plaintiffs, and the defendants had knowledge thereof before said tobacco was shipped, and that it was the intention of said Driver at the time he shipped said twenty-four hogsheads of tobacco at Lynchburg, that the same should be the property of the plaintiffs, to be delivered at the Bremen pier, Locust Point, Baltimore, to be forwarded by a steamship of the North German Lloyd to the plaintiffs in Bremen, and informed Messrs. A. Schumacher & Co., the agents of the North German Lloyd at Baltimore, to make out the ocean bill of lading with inland freight following, to the order of the defendants, to enable them as his agents to facilitate shipment and to collect the balance due him on said tobacco by bill of exchange with the bill of lading attached, and that said Driver gave an order to the defendants directing said A. Schumacher & Co. to hold

said tobacco subject to the order of the defendants, and that said order so given to the defendants was only for the purpose to enable the defendants to facilitate the shipment of the tobacco to the plaintiffs and to collect the balance of $225.93 due by plaintiffs for said tobacco, by having a draft for said amount drawn by Driver on the plaintiffs, payable to the order of the defendants and in their possession attached to the ocean bill of lading, and the defendants obtained possession of said tobacco under said order of Driver from Messrs. A. Schumacher & Co. and refused to deliver the same to the plaintiffs although payment of said balance of $225.93, and all costs and expenses were tendered to them on or about the 18th of October, 1890, then the jury must find for the plaintiffs, and if the jury find for the plaintiffs the measure of damages is the market value of said tobacco on the 18th of October, 1890, less the sum of $225.93, with interest thereon in the discretion of the jury.

The defendants offered the three prayers following:

1. The plaintiffs cannot recover in this action unless the jury shall find from the evidence that the plaintiffs had before the bringing of this suit a right to the immediate possession of the identical twenty-four hogsheads of tobacco which the witness, Driver, testified he shipped to A. Schumacher & Co. on May 22nd and May 29th, 1890, or to some of them, and in any event they can only recover for so many of said hogsheads as the jury shall find they had such right to the immediate possession of.

2. If the jury shall find that the witness Driver, while the said hogsheads of tobacco were in his possession or under his control, delivered or caused to be delivered them, or some of them to the defendants as collateral security for an indebtedness from himself to them which remains still unpaid, then the defendants can have acquired no right to the immediate possession of the

said hogsheads without the defendants' consent, unless the jury shall further find that before the bringing of this suit the plaintiffs tendered to the defendants the entire amount of the debt due them, for which the said hogsheads were so pledged.

3. That there is no evidence in the cause legally sufficient to enable the jury to find that the plaintiffs had at any time before the bringing of this suit a right to the immediate possession of the specific twenty-four hogsheads of tobacco, which the witness, Driver, testified were shipped by him to A. Schumacher & Co. on May 22nd and May 29th, 1890, or any of them, and therefore the verdict must be for the defendants.

The Court (STEWART, J..) granted the prayer of the plaintiffs, and rejected the three prayers of the defendants. The defendants excepted, and the verdict and judgment being against them, appealed.

The cause was argued before ALVEY, C. J., ROBINSON, IRVING, BRYAN, FOWLER, and McSHERRY, J.

*William Reynolds*, for the appellants.

Driver and the plaintiffs stood in the relation to each other of vendor and vendees, their agreement constituting an executory contract which could be converted into a complete bargain and sale, by the appropriation of specific goods to it. Until such appropriation should have been actually made, the plaintiffs could acquire no right of possession to or property in any specific goods under the contract. See *Benjamin on Sales, sec.* 358, *Bennett's Ed.; Golder vs. Ogden,* 15 *Penna. St.,* 528; *The St. Joze Indiano,* 1 *Wheaton,* 208–212.

Whatever else may have been Driver's intention at the time he made the shipment of the first thirteen hhds. from Lynchburg to Baltimore, on May 22nd, the fact that he wrote contemporaneously to A. Schumacher & Co.,

to whom they were directed, that they were for shipment "to order," for Bremen *per* Steamer Munchen, is *prima facie* evidence of his intention to reserve to himself the *jus disponendi*, and thereby to prevent the passing of the property in the tobacco to the vendees. *Benj. on Sales, Bennett's Ed.*, secs. 389, &c.; *Wait vs. Baker*, 2 *Exch.*, 1; *Van Casteel vs. Booker*, 2 *Exch.*, 691; *Ellershaw vs. Magniac,* 6 *Exch.*, 570; *Jenkyns vs. Brown*, 14 *Q. B.*, 496; *Turner vs. Trustees Liverpool Docks*, 6 *Exch.*, 543; *Mirabita vs. Imperial Ottoman Bk.*, *L. R.*, 3 *Exch. Div.*, 164; *Ogg vs. Shuter*, *L. R.*, 1 *C. P. Div.*, 47.

In the recent case of *Farmers Phosphate Co. vs. Gill*, 69 *Md.*, 549, this Court, after affirming the general rule that "a bill of lading operates a transfer of the property to the party in *whose favor it is drawn and to whom it is delivered*," adds, "if the vendors in this case had wished to *prevent* the property from passing, and to retain the right to deal with it after shipment, and while *in transitu*, they should, by the bill of lading, have made the cargo *deliverable to their own order,*    *    *    *" which is precisely what Driver announced to A. Schumacher & Co. his intention of doing in his letter of May 22nd, written the very day he made the first shipment of tobacco to them.

This *prima facie* evidence of an intention on the part of Driver not to pass the title in the twenty-four hogsheads to the plaintiffs on the day of shipment, becomes conclusive in this case from the fact that there is no evidence to contradict it. The testimony of all three of the witnesses, supported by Driver's subsequent letters, go to show that his purpose in giving the defendants the order on Schumacher for the twenty-four hogsheads on May 25th, was to vest in them a special property in the tobacco. As to the *extent* of this special property, whether it was to enable them to hold it as a security for the *general balance* of their account, or whether only

as a security for the payment of the draft for the 957.75 marks still due from the plaintiffs on account of the purchase money, was a matter as to which the evidence was conflicting, and should therefore have been submitted to the jury as proposed by the defendants' second prayer; but there being no conflict of evidence upon the point that Driver thereby intended to confer upon the defendants a special property in the tobacco for some purpose, it was error in the Court by granting the plaintiffs' prayer to leave it to the jury to find that Driver, by shipping the tobacco to Schumacher & Co., who were his own agents and in no sense the agents of the plaintiffs, intended to pass the property to the plaintiffs at that time. See *Dows, et al. vs. Nat'l Exchange Bk.*, 91 *U. S.*, 618, 633, &c.

As the Supreme Court there says: "That would have been an invitation to find a fact of which there was no evidence." *First Nat. Bank of Cairo vs. Crocker, et al.*, 111 *Mass.*, 163; *Fifth Natl. Bank of Chicago vs. Bayley*, 115 *Mass.*, 228; *Alderman vs. Eastern R. R. Co.*, 115 *Mass.*, 223; *Merchants National Bank of Cincinnati vs. Bangs*, 102 *Mass.*, 295, 296.

As the Supreme Court of Massachusetts says in *Foster vs. Ropes*, 111 *Mass.*, 16: "The intention of the parties as to the time when the title is to pass, can be ascertained only from the terms of the agreement as expressed by the language and conduct of the parties as applied to known usage and the subject-matter."

And again, in *Wigton vs. Bowley*, 130 *Mass.*, 254: "He must manifest that intention at the time of their delivery to the carrier. It is not the secret purpose, but the intention as disclosed by the vendor's acts and declarations at the time, which governs." Here all the acts and declarations of Driver at the time and immediately before and after shipping the tobacco at Lynchburg, manifest an intention to reserve to himself the *jus disponendi*, and not to divest himself of his title, or to make an unconditional delivery to the plaintiff.

If, therefore, Driver, by directing Schumacher & Co., on May 22nd, to ship the tobacco to order, evinced his intention of retaining the *jus disponendi* in himself for any purpose whatever, he still retained the legal title to the tobacco; and as the property had not passed, he had a right afterwards to change his original intention of delivering it to plaintiffs upon payment of the balance of the purchase money, still due from them under the contract, and could pledge it to the defendants, as they claim he did, for the general balance of his account; or he might even have sold it absolutely for cash to a third party having full knowledge of the entire transaction, and have passed to such party a perfectly good title to the tobacco, which the plaintiff could not impeach. See *Mitchel vs. Ede*, 11 *A. & E.*, 888, cited with approval by the Supreme Court of U. S. in *Dows vs. Natl. Exchange Bk.*, *supra;* *Wait vs. Baker*, 2 *Exch.*, 1; *Ogg vs. Shuter*, *L. R.*, 1 *C. P. D.*, 47; *Emery's Sons vs. Irving National Bank*, 25 *Ohio State*, 360, 366; *The St. Jose Indiano*, 1 *Wheat.*, 208, 212. Compare also *Andrews vs. Durant*, 11 *N. Y.*, 35.

Trover being an action for a tort, to wit, the illegal conversion of the plaintiff's property, it does not lie unless the alleged tort was committed before the bringing of the suit. *Dungan, Adm'r vs. Mut. Life Benefit Ins. Co. of N. J.*, 38 *Md.*, 248.

Now, in this case, according to the undisputed testimony, Driver being the legal owner of the goods which he had shipped to A. Schumacher & Co., *as his agents*, with instructions to send them to Bremen, with bill of lading made out to *his own order*, the order on them of March 25th, was in law a delivery to the defendants and clothed them, as pledgees, with a special property in the tobacco, the general property remaining in Driver. *Gibson vs. Stevens*, 8 *How.*, 384, 399; *First Nat. Bank of Green*

*Bay vs. Dearborn,* 115 *Mass.,* 219; *First Nat. Bank of Cairo vs. Crocker, et al.,* 111 *Mass.,* 163.

The amount for which the tobacco was thus pledged by Driver to the defendants, was a question of fact for the jury to decide, the evidence of the witnesses being contradictory; but assuming for the sake of the argument that the plaintiffs' contention is correct and Driver only pledged the tobacco to defendants to secure the balance of $225.95 due him upon it, it would be Driver and not the plaintiffs who would have a right to the possession of the tobacco upon making tender of the amount for which it had been pledged. *Fettyplace vs. Dutch,* 13 *Pickering,* 388; *Tuxworth vs. Moore,* 9 *Pick.,* 347; *First National Bank vs. Dearborn,* 115 *Mass.,* 219; *First National Bank of Cairo vs. Crocker, et al.,* 111 *Mass.,* 163; *Gibson vs. Stevens,* 8 *Howard,* 384.

*M. R. Walter,* and *L. P. Hennighausen,* for the appellees.

The case, is one simply between an agent who in compliance with his principal's directions buys for his, the principal's, *"order, account and risk"* a lot of tobacco for which the principal furnishes the money as called for— the agent setting the tobacco apart for, and appropriating the same to, his principal as it is bought, and marking it with special marks to identify it as his principal's property, and a third party claiming it against the principal upon an order of the agent obtained by the third party with full knowledge that the tobacco had been so bought, marked and set apart for the principal in fulfilment of the principal's special order, and that it had already been almost fully paid for by the principal. It requires neither argument nor authority to show, that the third party's claim cannot be maintained.

The appellants will hardly seriously claim any rights in this case under the alleged agreement of the 8th of April. That agreement the appellants induced Driver

to sign with full knowledge that by so doing he was agreeing to violate his principal's instructions to buy the tobacco, for which, as the appellant knew, the principals had furnished the money.   Driver was, according to that agreement, not only not to purchase any more tobacco in fulfilment of the appellees' order, but was not even to ship them the tobacco already bought and set apart for them at their risk, in order that the Fallenstein order might be *first* completed, and the appellants, secure thereby from Driver a payment of $2500, instead of the small balance due on the Meyer & Krose order.   This too, in spite of the fact, of which the appellants were aware, that Driver had received the Fallenstein order after that of the appellees.

If, however, this Court should be of opinion that the relations between Driver and the appellees were those of vendor and vendee, then the tobacco became the property of the appellees as it was bought and set apart for them by Driver.   On the 22nd of May, 1890, the twenty-four *hogsheads* had been completed, all marked [K] B, and appellees notified of the fact by letter, which inclosed an invoice thereof showing the twenty-four *hogsheads* had been bought "for order, account and risk" of appellees. After this they belonged to appellees, subject to Driver's claim for $225 balance, and nothing that Driver could thereafter do could change the title.   The appellants certainly could not, with full knowledge of the facts, acquire any rights in them.

If the title did not then vest in the appellees it assuredly did after they were delivered at the *Railroad* depot at Lynchburg for the appellees, in accordance with the terms of their order of the 13th of February, 1890.   In fact, there is not the slightest contradiction of the evidence that they were shipped from Lynchburg by Driver for the appellees.   The title therefore vested in the appellees.   The property passed when the goods

were delivered at the depot of Lynchburg in pursuance of the contract. *Hall & Loney vs. Richardson*, 16 *Md.*, 396; *Halliday vs. Hamilton*, 11 *Wallace*, 565; *Browne vs. Hare*, 3 *H. & N.*, 484, 27 *L. J. Exch.*, 372; *Browne vs. Hare*, 4 *H. & N.*, 822, 29 *L. J. Exch.*, 6; *Bailey vs. Hudson River R. R. Co.*, 49 *N. Y.*, 75; *Nelson, et al. vs. C. B. & Q. R. R. Co.*, 2 *Bradwell*, 188; *Walley vs. Montgomery*, 3 *East*, 585; *The Jacob Dold Packing Co. vs. G. Ober & Son's Co.*, 71 *Md.*, 155.

Even were the fact of the shipment for the appellees controverted, whether Driver intended the goods for the appellees when shipped would still be a question of fact to be settled by the jury, even though the bill of lading were in his name. *Browne vs. Hare*, 3 *H. & N.*, 484, 4 *H. & N.*, 822; *Joyce vs. Swann*, 17 *C. B., N. S.*, 84; *Van Casteel vs. Booker*, 2 *Exch.*, 691; *Fragano vs. Long*, 4 *B. & C.*, 219; *Walley vs. Montgomery*, 3 *East*, 585.

McSHERRY, J., delivered the opinion of the Court.

The appellees, trading as Meyer and Krose of Bremen, Germany, sued the appellants, Ricards, Leftwich and Company of Baltimore, in trover to recover the value of twenty-five hogsheads of tobacco which the appellees alleged the appellants had converted to their own use. Meyer and Krose, who were dealers in leaf tobacco, gave to M. Driver, of Lynchburg, Virginia, with whom they had had previous business transactions, an order to buy for them twenty-five hogsheads of a particular brand of tobacco called "oblong," limiting the price to five and one-half cents a pound, packed in hogsheads and delivered at the railroad depot in Lynchburg. Prior to the receipt of this order, Driver had been advised by his agent in Bremen, that he would likely get it, and he at once began to buy for the purpose of filling it. In February, 1890, when the order was cabled him, he had purchased some of this brand, and had it stored and marked in a

particular way to identify it as belonging to Meyer and Krose. On the day following the receipt of the order, he drew on the appellees for three thousand marks, part of the price of the tobacco, forwarded the draft to the appellants, with whom he had been formerly associated in business, and drew upon them for five hundred dollars, against the Bremen draft. The appellants endorsed the draft on Meyer and Krose and had it discounted, and placed the proceeds to the credit of Driver, who was then in debt to them. Meyer and Krose paid the draft at maturity. On March the seventh, Driver again drew on the appellees for three thousand marks additional, and this draft was discounted by the appellants as the former one had been, and was paid by Meyer and Krose at maturity. The aggregate amount of the two drafts reduced to United States money was fourteen hundred and eight dollars, and this was used, according to Driver's testimony—which was not contradicted in this particular —in paying for the tobacco bought by him for Meyer and Krose. There was evidence showing that the appellants were aware that the tobacco bought with the proceeds of these drafts was bought for Meyer and Krose. Owing to the scarcity of the crop there was some delay on the part of Driver in filling the order. On May the twenty-second, Driver forwarded thirteen hogsheads of the tobacco, and on the twenty-ninth, eleven more by the Richmond and Danville Railroad to A. Schumacher and Company, Bremen Pier, Locust Point, Baltimore, for shipment by steamer to Bremen. Each hogshead was marked with the letter K within a diamond, and the letter B following, to indicate that it was intended for Meyer and Krose, Bremen; which mark the appellants fully understood. The invoice sent to the appellees was for twenty-four hogsheads Virginia tobacco "bought for order, account and risk of Meyer and Krose, Bremen." Driver gave the appellants an order on A. Schumacher

and Company for the twenty-four hogsheads, and directed Schumacher and Company to make out the ocean bill of lading in the name of the appellants as shippers, to avoid delay in forwarding, and to enable the appellants to attach the bill of lading to the draft on Meyer and Krose for the balance due on the tobacco. When this order was given by Driver to the appellants they knew the twenty-four hogsheads, of which thirteen had then been consigned as just stated to A. Schumacher and Company, were intended for Meyer and Krose, and that Meyer and Krose had paid through the two drafts, heretofore referred to, the whole price of the tobacco except two hundred and twenty-five dollars—which latter sum was still due by them. Under the order from Driver the appellants took possession of the tobacco and held it as the property of Driver, as security for the account current due by Driver to them. Upon their refusal to deliver it to the appellees this action was brought, and a verdict was rendered and a judgment was entered in favor of the appellees for the value of the tobacco less the amount due on it by Meyer and Krose. The appellants offered evidence during the progress of the trial, tending to show that Driver had pledged this tobacco to them in April, and that he gave the order to A. Schumacher and Company in pursuance of that pledge, and not for the purpose testified to by Driver.

It is perfectly obvious that the right of the appellants to the possession of the tobacco in question, if they have any right to it at all, must have been derived by them from Driver, either by virtue of the pledge of it, or under the order to A. Schumacher and Company directing its delivery to them. If Driver was merely an agent entrusted with an order to purchase, and if he did purchase the tobacco with the money of the appellees for the purpose of filling that order, the tobacco belonged to Meyer and Krose and not to Driver ; and it needs neither argu-

ment nor the citation of authorities to show that he had no power to pledge it for the payment of his own debt beyond the extent of his lien upon it. He did not have the tobacco in stock, but he bought it, and he bought it not for himself and not to sell again in the market, but to fill a specific order and he paid for it with the funds of his principal. As he purchased it he set it apart and marked it, and when packed he placed another mark upon the packages, which both he and the appellants knew was designed to indicate that Meyer and Krose were the owners ; and the invoice which he forwarded plainly expressed that the tobacco was bought for the order, account and risk of the appellees. But this is not all. The appellants knew the money was obtained from Meyer and Krose for the purpose of buying this tobacco, because the two drafts aggregating six thousand marks drawn by Driver on Meyer and Krose, passed through the hands of the appellants, and they knew perfectly well what use Driver was making of the money. At the very time they secured the pledge of the tobacco from Driver they knew he had set it apart and marked it as the property of Meyer and Krose. And when they procured the order on Schumacher and Company they were informed the tobacco had been forwarded by rail from Lynchburg for shipment by steamer from Baltimore to Meyer and Krose. With full knowledge, therefore, that Driver did not own or even claim to own the tobacco, and that Meyer and Krose had paid for it (except a small balance of two hundred and twenty-five dollars) they got possession of it and now undertake to hold it as security for Driver's debt to themselves. As Driver could not pledge what was not his, and as the appellants do not and can not claim as *bona fide* assignees of the bills of lading without notice, they are in no position to assert in themselves either an absolute or a qualified ownership of the tobacco, or a right to the possession thereof against the real owner

further than to the extent of the balance due to Driver by Meyer and Krose.

Whether Driver be regarded as the mere agent of Meyer and Krose or as vendor is not material, because in either event, the ownership and the right to the possession of the tobacco, as a legal consequence from the facts disclosed in the record, and already stated, vested in the appellees, subject only to Driver's lien for the two hundred and twenty-five dollars remaining unpaid, and no act that Driver did, either with respect to pledging the tobacco or giving the appellants an order on Schumacher and Company, could operate to divest that ownership or right of possession in favor of parties having full notice of the claims of Meyer and Krose. This is substantially the effect of the instruction given by the Court to the jury. The amount due on the tobacco was tendered by the appellees to the appellants before the suit was brought, and the instruction directed the jury, if they found for the plaintiffs, to abate that amount from the value of the tobacco. The only objection urged against this instruction is that it erroneously assumed that Driver was the agent of Meyer and Krose. But if this was an erroneous assumption—and we think it was not —it did not prejudice the appellants in the least—the result, taking the facts hypothetically stated in the instruction to be true, must have been the same whether Driver was agent or vendor.

The first prayer presented by the appellants was properly rejected, because it submitted a question of law to be found by the jury. It required the jury to find that the plaintiffs had "a right to the immediate possession of the identical twenty-four hogsheads of tobacco," instead of submitting hypothetically, for finding by them, the facts from which that conclusion of law was sought to be drawn.

Ricards, Leftwich & Co. *vs.* Meyer & Krose.

The second prayer of the appellants was equally faulty. It asked the Court to say to the jury that if Driver, whilst the hogsheads of tobacco were in his possession or under his control, delivered them to the appellants as collateral security for his debt to them, then the appellees could not acquire a right to the immediate possession of the tobacco without the consent of the appellants, or unless the appellees first paid to the appellants the entire amount of Driver's indebtedness to Ricards, Leftwich and Company. This prayer entirely ignored all the evidence tending to show, and in fact showing, that the appellants had full knowledge that Meyer and Krose were the owners, or claimed to be the owners, of the tobacco ; and it permitted the appellants to hold the property as security for Driver's debt to them, notwithstanding the jury might believe from the evidence that the appellants acquired possession of the tobacco by fraud. It denied the right of Meyer and Krose to recover if Driver delivered the tobacco to the appellants as collateral security for Driver's own debt to them, no matter how wrongful his act was in so delivering it, and no matter how fraudulent their conduct was in receiving it. In effect it declared that Meyer and Krose had no right to the possession of the tobacco if Driver had pledged it to the appellants, even though that pledge had been fraudulently made, and had been accepted in equally bad faith.

The third prayer asked the Court to say there was no legally sufficient evidence to enable the jury to find that the appellees had, before the institution of the suit, a right to the immediate possession of the tobacco. Apart from other criticisms to which the prayer is open, it is sufficient to observe that there was, in our opinion, quite enough evidence in the cause to establish the right of the appellees to the possession of the tobacco, and the prayer was consequently properly rejected.

As we find no errors in the rulings excepted to, the judgment will be affirmed, with costs in this Court and in the Court below.

*Judgment affirmed,*
*with costs.*

(Decided 13th November, 1891.)